**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal Case No.: 20-cr-00057 (KBJ/RMM) |
| | ) |
| YOUNG KYU O, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**<u>DETENTION MEMORANDUM</u>**

      This matter comes before the Court on a motion by the United States requesting that

Defendant Young Kyu O ("Mr. O") be detained pending trial.  Mr. O has been charged by

Indictment with one count of Kidnapping, in violation of 18 U.S.C. § 1201(a)(1), one count of

Unlawful Possession with Intent to Distribute Five Hundred Grams or More of a Mixture and

Substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. §

841(a)(1) and (b)(1)(A)(viii), and one count of Using, Carrying, Possessing, and Brandishing a

Firearm During and in Relation to a Crime of Violence or a Drug Trafficking Offense, in

violation of 18 U.S.C. § 924(c)(1)(A)(ii).  Mr. O was arrested on March 3, 2020, and appeared

before the undersigned that day for his initial appearance.  At the initial appearance, the United

States moved for a detention hearing pursuant to 18 U.S.C. § 3142(f)(1)(A), because Mr. O is

charged with a crime of violence.  In its detention memorandum, the United States also indicated

that it requested a detention hearing on two other bases: 18 U.S.C. § 3142(f)(1)(C), as Mr. O is

charged with an offense "for which a maximum term of imprisonment of ten years or more is

prescribed in the Controlled Substances Act,"  21 U.S.C. § 801 *et seq.*, and 18 U.S.C. §

3142(f)(1)(E), as Mr. O is charged with a felony involving the possession of a firearm.  The

undersigned granted the United States' request, and after multiple continuances, held a detention

hearing on March 19, 2020.   Due to the current pandemic caused by the coronavirus, Mr. O

consented to appearing at the detention hearing via video teleconference.  At the conclusion of

the hearing, the undersigned determined that Mr. O should be held without bond pending trial.

This memorandum fulfills the Bail Reform Act's requirement that a pretrial detention order

"include written findings of fact and a written statement of the reasons for the detention."  18

U.S.C. § 3142(i)(1); *see also United States v. Nwokoro*, 651 F.3d 108, 109 (D.C. Cir. 2011) (per

curiam).

## **FINDINGS OF FACT**

   At the detention hearing both counsel for Mr. O and counsel for the United States

proceeded by proffer.  Based on the proffer by counsel, the Government's Memorandum in

Support of Pretrial Detention (ECF No. 4), the Pretrial Services Report (ECF No. 11), and the

entire record herein, the undersigned makes the following findings of fact.

   Mr. O allegedly kidnapped a victim, transported the victim from Virginia to Washington,

D.C., and held the victim at gunpoint to use the victim as a ransom to get back drug proceeds that

had been stolen.  Specifically, on or about February 26, 2020, a witness, W-1, reported a

kidnapping to the Warren County Sheriff's Office in Front Royal, Virginia.  W-1 informed law

enforcement that another witness, W-2, lived in Virginia and had a safe in W-2's house that had

contained thousands of dollars, but that it had been burgled a few days before and the money had

been taken.  W-1 informed law enforcement that Mr. O was upset about the stolen money, and

had kidnapped the victim and was holding the victim hostage to force the victim's cousin and the

cousin's boyfriend to return the money.

On February 26, 2020, W-1 received a call from the victim, and the victim informed W-1 that the victim was being held against the victim's will as a ransom for the stolen money, which the victim said was related to narcotics trafficking.  W-1 also informed law enforcement that Mr. O came onto the line during the call and confirmed what the victim had said.  In addition, Mr. O allegedly sent a video to one of the victim's friends that showed the victim blindfolded with a firearm pointed at the torso of the victim, although the people holding the victim hostage cannot be identified in the video.

W-1 described Mr. O as an Asian male of average height, who is physically fit and has short black hair.  W-1 also stated that W-1 knew Mr. O was a drug dealer and believed Mr. O was part of the Triad street gang organization.  Lastly, W-1 provided law enforcement with the victim's and Mr. O's phone numbers, and law enforcement was able to use that information, as well as an estimated address for Mr. O provided by W-2, to locate an apartment building in Washington, D.C.  During its surveillance of the apartment, law enforcement saw Mr. O in the lobby of the apartment building and arrested him.  When he was arrested, Mr. O had a backpack that contained a large quantity of suspected narcotics, and a small bag of white powder was recovered from his right front pocket that tested positive for cocaine.  Law enforcement also rescued the victim after they saw the victim exit an elevator and enter the lobby of the apartment building.

After Mr. O was arrested and the victim was rescued, law enforcement searched the apartment where the victim had allegedly been held.  During the search, officers recovered a loaded 7.62 semi-automatic rifle, which, the United States proffered, was the same or similar weapon used and pointed at the victim during the kidnapping, a safe that held, among other things, two different Virginia Driver's Licenses in Mr. O's name, drug paraphernalia, other

narcotics, and more than 1000 grams of suspected methamphetamine.  The United States included photographs of the recovered contraband in its detention memorandum.

## **LEGAL STANDARD**

"In our society, liberty is the norm and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).  The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.*, articulates the circumstances that trigger that exception.  Specifically, it authorizes a judicial officer to order the detention of a defendant before trial if the judicial officer determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).

If a judicial officer determines after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then that person shall be held pending trial.  18 U.S.C. § 3142(e)(1).  A detention decision based upon the defendant's dangerousness to the community must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f); *see United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996) (per curiam).  In contrast, a detention decision based upon a finding that no set of conditions will reasonably assure the defendant's appearance in court "need only be supported by a 'preponderance of the evidence.'" *E.g., United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987) (quoting *United States v. Vortis*, 785 F.2d 327, 328–29 (D.C. Cir. 1986) (per curiam)).

The Bail Reform Act directs judges to consider four factors in determining whether any conditions of release will reasonably assure a defendant's future presence in court or assure the safety of any other person and the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and

characteristics; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  *See* 18 U.S.C. § 3142(g); *see e.g.*, *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996) (per curiam).  The court must consider the available information pertaining to all four factors, even if the parties' arguments do not address each factor.  *See* 18 U.S.C. § 3142(g); *United States v. Hassanshahi*, 989 F. Supp. 2d 110, 117 (D.D.C. 2013).

When there is probable cause to believe that a defendant committed certain offenses, a rebuttable presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3).  Once this rebuttable presumption has been triggered, "the presumption operate[s] *at a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption."  *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (emphasis in original).  Specifically, "the defendant must proffer 'at least some evidence' or basis to conclude that the case falls 'outside "the congressional paradigm"' giving rise to the presumption."  *United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018) (quoting *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010)). Furthermore, "even if the defendant offers evidence to counter the presumption, the presumption does not disappear entirely."  *United States v. Hunt*, 240 F. Supp. 3d 128, 132 (D.D.C. 2017). Instead, the "presumption is incorporated into the other factors . . . in determining whether to grant a conditional release and is given substantial weight."  *United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (quoting *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011)); *see also United States v. Hite*, 76 F. Supp. 3d 33, 43 (D.D.C. 2014) (detaining the defendant although the defendant had presented enough evidence to rebut a presumption of

detention).  Two types of offenses that trigger the rebuttable presumption are Controlled

Substance Act offenses that carry a maximum term of incarceration of 10 years or more, and

offenses in violation of 18 U.S.C. § 924(c).  18 U.S.C. § 3142(e)(3)(A–B).

## DISCUSSION

At the detention hearing, the United States proceeded by proffer and relied on the

indictment to establish by probable cause that Mr. O committed the charged offenses.  Mr. O is

charged with one count of Unlawful Possession with Intent to Distribute Five Hundred Grams or

More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine, in

violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii).  This is a Controlled Substances Act

offense which carries a minimum term of incarceration of 10 years, and a maximum term of

incarceration of life, thus this offense carries a rebuttable presumption of detention.  Mr. O is

also charged with Using, Carrying, Possessing, and Brandishing a Firearm During and in

Relation to a Crime of Violence or a Drug Trafficking Offense, in violation of 18 U.S.C. §

924(c)(1)(A)(ii), an offense which also triggers a rebuttable presumption of detention.  As

discussed below, the undersigned finds that: (1) Mr. O has not rebutted the presumption of

detention; (2) three of the four Bail Reform Act factors weigh in favor of pretrial detention; and

(3) the United States has shown by clear and convincing evidence that no release conditions

could adequately mitigate the danger posed by Mr. O's release.

The nature and circumstances of the charged offenses favor pretrial detention.  Mr. O is

charged with three very serious offenses, each of which carry a significant term of incarceration

upon conviction.  Mr. O allegedly kidnapped a victim and held the victim as ransom for stolen

drug proceeds.  In addition, Mr. O allegedly sent a video of the victim being held at gunpoint to

the victim's friend as part of the ransom demand.  The United States proffered that the firearm

was loaded at the time the video was made; although no direct evidence supports that proffer, the United States asserted that the gun in the video matches the loaded firearm found in the apartment where the victim was allegedly held.  This is highly dangerous conduct, and the nature of the offense—that the victim was taken due to the victim's relationship to the alleged people who stole the drug money—suggests this was pre-planned, rather than a crime of opportunity.

Although counsel for Mr. O disputed some of the conclusions the United States drew from the proffered evidence, the evidence is still strong enough for this factor to favor pretrial detention.  Law enforcement began to investigate a kidnapping based on a report from W-1.  As part of its investigation, law enforcement learned that Mr. O had allegedly kidnapped the victim as part of a ransom demand for drug money that had been stolen from W-2's safe.  Law enforcement located Mr. O's residence based on his and the victim's cellphone number, as well as from an address (which later turned out to be slightly incorrect) provided by W-2.  When law enforcement arrived at the address, they found Mr. O, the victim, and a large amount of contraband.  The victim informed law enforcement that the victim had been taken from Virginia against the victim's will.  Counsel for Mr. O emphasized that the victim was found in the lobby of the apartment building and was not restrained; he proffered that the victim may have actually been a participant in the kidnapping, rather than a victim.  This is supported by the victim's purported statement that the victim was not held against the victim's will, and had simply been taken from Virginia against the victim's will and was unable to return.  In addition, counsel for Mr. O noted that the people in the video of the victim being held at gunpoint are not identifiable, and that there is no DNA or other forensic evidence tying Mr. O to the firearm.  Although these are valid arguments that will likely be developed further at trial, the undersigned finds that W-1's report, the victim's statement to law enforcement that the victim was taken against the victim's

will, the video apparently showing the victim held at gunpoint, and the fact that Mr. O was one of the people who sent the video to one of the victim's friends, is sufficient evidence to suggest that Mr. O is dangerous.  In addition, the evidence against Mr. O related to the methamphetamine charge is even stronger, and also weighs in favor of pretrial detention.  At the time of his arrest, Mr. O had a backpack containing a significant amount of what law enforcement believes to be narcotics (although apparently it has not yet been tested).  He also had a small bag of cocaine. When law enforcement searched the apartment where Mr. O allegedly held the victim, they found a safe with two different driver's licenses with Mr. O's name on them, as well as drug paraphernalia and approximately 1000 grams of suspected methamphetamine.  Mr. O's presence at that apartment combined with his identification in the safe where a large quantity of suspected narcotics was found is strong evidence that Mr. O was involved in drug trafficking.  For all of these reasons, the evidence is strong enough for this factor to favor pretrial detention.

Mr. O's history and characteristics favor release.  Mr. O is 39 years-old and has no prior convictions.  He also has no history of noncompliance while on supervision and no bench warrants.  He has lived in the United States for most of his life and no longer has travel documents.  These are all positive characteristics that make this factor favor release.

The final factor, the nature and seriousness posed to any person or the community posed by Mr. O's release, favors pretrial detention. As discussed above, Mr. O is charged with a very serious, violent offense against an identifiable victim.  One of the dangers posed by Mr. O's release is that he would engage in similar drug-related violent conduct against the instant victim, or another member of the community.  The circumstances and evidence discussed above indicate that this risk is substantial.  The other potential danger posed by Mr. O's release is that he would continue to introduce addictive and dangerous narcotics into the community.  When Mr. O was

arrested he had a significant amount of suspected narcotics on his person, additional suspected narcotics were found in a safe that also contained his driver's licenses, and the kidnapping was the result of trying to ransom the victim for the return of drug proceeds. All of this evidence suggests Mr. O was involved in narcotics trafficking, and was willing to take drastic and violent measures to further that trafficking. Thus, despite the lack of criminal record, the undersigned finds that this second potential danger is also significant, and that no release conditions, including electronic monitoring as requested by Mr. O, would be sufficient to reasonably assure the safety of the victim or the community.

Finally, the undersigned finds that Mr. O has failed to rebut the presumption of detention. Although Mr. O has no criminal record—a fact which sometimes rebuts the presumption—it is notable that the type of dangerous conduct involved in the instant matter is exactly the type of conduct that caused Congress to create the presumption for serious narcotics offenses. In other words, Mr. O has failed to present evidence suggesting his conduct does not fall within "'the congressional paradigm'" giving rise to the presumption." *Taylor*, 289 F. Supp. 3d at 63 (quoting *Stone*, 608 F.3d at 946 (6th Cir. 2010)). However, even if Mr. O had presented sufficient evidence to rebut the presumption of detention, the undersigned still would have found detention to be appropriate based on the balance of the Bail Reform Act factors.

## CONCLUSION

For the foregoing reasons and those stated on the record at the March 19, 2020 hearing, the Court concludes that Mr. O has not rebutted the presumption of detention and that the United States has demonstrated by clear and convincing evidence that no release condition or combination of conditions would adequately assure the safety of the community if Mr. O is released pending trial. The undersigned had no occasion to address whether Mr. O presents a

flight risk due to finding detention proper as to dangerousness.  The Court GRANTS the United

States' motion for detention without bond.


Dated:   March 30, 2020

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE